The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Please be seated. Good morning, ladies and gentlemen. We have five cases on the calendar this morning. Government employee case, three patent cases, one from the patent office and two from district court. And we have a veteran's appeal which is being submitted on the brief and not being argued. Our first case is Kenneth Tompkins v. The United States Postal Service, 2009-32-19. Ms. McIvor, welcome to the borough of the court. Thank you. Good morning, your honors. May it please the court. I'm Allison McIvor, attorney for the petitioners. We are here this morning because my client, the petitioner, Mr. Tompkins, an 11-year exemplary employee of the Postal Service wishes to return to the Postal Service and to be reinstated in his position. And with all due respect, we argue that under the circumstances, the agency's decision to terminate him must be reversed. Didn't he stipulate, though, that he obstructed the mail by taking a camcorder and that that taking constituted unauthorized possession? Wasn't it stipulated? Well, yes, he did stipulate to that fact. However, we argue that the MSPB, that MSPB's decision that there were in fact three charges was an erroneous one and is not supported by substantial evidence. We argue, in fact, that there was one act or one specification that is characterized by three elements and that the one act was the removal of the camcorder or the delaying of the mail as the administrative judge actually said in his decision. And that pursuant to both Burroughs and Alvarado, we argue that there was only one act, one charge, and that there were not three as interpreted. And you're saying all three components had to have been proved. Exactly. And that they did not prove the opening. Precisely, precisely. Okay. Which the administrative judge conceded in his opinion that they had not proven the opening. We are here actually bringing four issues. The first of the issues that we brought is regarding the use of the Douglas factors. The law requires, as stated in Douglas, that all of the relevant Douglas factors be considered. And on direct examination, the management official, who was the deciding official, actually stated that she did not recall, not even that she did not recall, but that she did not consider whether or not there was a possibility of rehabilitation. We argue that that in and of itself is enough for the judge to have ruled that the Douglas factors were not sufficiently considered. She was only able to recite three of the Douglas factors that she had actually considered. One of which was the seriousness, which she characterized as the seriousness of the issue. So much so that in the judge's decision, he actually called the act theft, which it was absolutely determined that it wasn't theft. Well, you know that review of a penalty is very much at the discretion of the agency, and this court rarely would override that. Right. But the Douglas decision actually gave the MSPB and this court the right to review the act that's been sustained and to mitigate the penalties. Now, Ms. McIvor, I read the material relating to the statement about rehabilitation. And correct me if I'm wrong in my interpretation, but what I took away from that passage was that I don't remember the name of the witness. Ms. Bailey. Bailey. Thank you. I took away that Ms. Bailey was saying she did not consider rehabilitation. Using the word consider to mean she did not deem it to be applicable in this case. She went on to explain because of the seriousness of the conduct. I did not understand her testimony, and again, correct me if you think this is a misreading of the testimony, but I didn't understand it to be that she didn't even think about the question of rehabilitation, but rather she rejected this as a case in which rehabilitation would be sufficient to warrant a different outcome. Well, with all due respect, I do disagree. Okay. Her exact statement was that she did not consider it. She used that language because that was- Yeah, I know she used the word consider. What my submission to you is, is that not, can one not read that to mean she did not consider it to be sufficient in that sense? No, because the judge actually pushed her on that and asked, are you saying that you didn't consider it to be important enough or that you didn't consider it at all? And she said that she did not consider it at all, in addition to which she used that language and that language consider was used throughout the hearing to address each of the Douglas factors, whether each of them were considered. And the seriousness of the charge is but one of the Douglas factors. There are 12 of them. The only other two that she even made any reference to, and that was in response to questioning, were that his number of years in service and the fact that he had never been subject to discipline prior to this incident. She continued to go back to the seriousness, which is not supported by the fact that there was undisputed testimony that other postal employees have taken materials out of, that have been broken or that are unmarked, that are out of boxes with no marking or identifying markings and taking them for themselves. So that I would argue that the consider means that she did not think about it. Okay. Under the circumstances. Okay. The second issue that we've raised is the failure of the Postal Service to issue the emergency letter, letter of emergency off-duty status. That's a notice requirement. And again, under Alvarado, there was some discussion of whether or not... What is the purpose of that document? The purpose of the document is to put the individual on notice of what it is that they are being placed off-duty for and what's going to be taking place during that time so that they, to afford them due process. How was, in that respect, I mean, how was Mr. Tompkins disadvantaged in the sense that didn't he know why he was being placed off-duty and what the possible charges were, I mean, given the circumstances? He actually did not know. The incident with the camcorder had taken place months before in May of 2007, I believe. And the investigators from the OIG's office came to meet with him some six or seven months later and when they started questioning him, he repeatedly asked, what is this about, what are we here for, and so on. At the end of that questioning, he knew that there were questions about the camcorder. He did not know why he was being placed on emergency off-duty status and what was going to be happening during that time, whether or not this was indeed the punishment, the fact that he was going to be placed in this emergency off-duty status, or whether there was going to be some investigation moving forward that he needed to avail himself of representation to address. How, though, do you say or do you contend he was harmed by not getting this in timely fashion? I mean, what would he have done differently, let me put it this way, what would he have done differently in your view? He would have gotten representation, either from the union or sought out counsel at that point to help him to navigate the investigation that was going on and to be sure that his voice was heard in that investigation, which it was not. As things stood, he was placed in this emergency off-duty status, and he was in sort of a black hole until the decision was made, and the next thing that he heard came in the form of a notice of proposed removal. And so he was unable to avail himself of any representation as a result of their failure to provide this notice. When, in your view, again, clarify for me, when, in your view, was the notice, should the notice have been given? Well, legally it needed to have been given within a reasonable period of time. Within a reasonable period of time of? Of when he was placed on the emergency off-duty status. But not necessarily before. No, not necessarily before. So he would be, and he was placed on emergency off-duty, emergency administrative leave. When was it? It was on May, or October. It was on October the 3rd, I believe. All right, and when was that vis-a-vis when he was questioned? I'm sorry, it was May. When was that prior to, was that prior to or after his interrogation interview with the Postal Inspection? It was after, on that very day. So he was put on, so after his interview he was put on, okay. Right, immediately. All right. Okay. The third issue that we've raised has to do with something that I've already spoken a bit about, as to whether there are three charges as decided by the administrative judge, or one charge with three elements. We argue very strenuously that there's one charge that is composed of three elements, for a number of reasons. One of which is, in the case law that speaks about determining whether or not it's one charge with elements, or three separate charges, one of the things that's looked to is how the charge itself is written. Again, Alvarado says that the Postal Service, or the agency, whatever agency it is here, the Postal Service, is bound by the way that they write the charge. They can't, after writing the charge, use whatever the facts are to come up with a better way to prove something. And the way that the charge was written was for improper conduct, colon, opening, obstruction, and possession, with commas between each of those, which is a list of things to define what comes before the colon. In other words, your argument is based on punctuation? It's not entirely based on punctuation. In addition to the punctuation, and I believe that that is relevant, Your Honor, with all due respect, because in one of the cases, it speaks specifically to the fact that how the charge was written, and as demonstrated by, was the language that was used in the actual charge. And that was one thing that the court looks explicitly to in deciding that it was one charge. Ms. McArthur, you are well into the time you wanted to save for rebuttal. Yes. Was there another point you wanted to make before you sit down? Yes. Thank you. The fourth point is that the administrative judge's failure to rule on our briefs regarding whether it was one or three charges prior to the hearing resulted in an extremely harmful error to the petitioner, and his characterization that the only issue that we were addressing there that day was the opening. We prevailed on that issue, and yet, because that decision hadn't been made, we weren't able to address it at all. And the entire hearing was sort of an act, a futile act, because we didn't get to address the issue that ultimately was the deciding one, and we were limited to only address this one issue, which, although the petitioner prevailed on that issue, they couldn't prevail, he couldn't prevail on the case wrongfully, we believe. Why don't we hear from the government now, and we'll give you three minutes for rebuttal. Thank you very much. May it please the Court? Good morning. Good morning, Your Honors. My name is Mike Elston. I'm here representing the Postal Service in this appeal from rescission of the Merit Systems Protection Board. Mr. Tompkins was a Postal Service employee, as you know, who broke the cardinal rule of the Postal Service. He took the mail. The rules regarding the sanctity of the mail, rules he specifically acknowledged, go to the heart of the Postal Service's business, which is to promptly, reliably, and efficiently deliver the mail entrusted to it. Mr. Tompkins violated that trust, and the Postal Service rightly terminated his employment. I'll take the issues in the order that opposing counsel raised them, unless the Court has specific questions. First, to address the issue of the Douglas factors, Judge Bryce and I agree entirely with your reading of the transcript, and I think it's important to remember that Ms. Bailey is not a lawyer. She's not using terms like consider with legal accuracy, the kind of accuracy you expect of a lawyer. What she said, specifically reading from the transcript, is that when she was asked the question, did you believe there was any possibility for rehabilitation for Mr. Tompkins? Well, there might be rehabilitation for many, but in our business, that's a serious offense. It really is a serious offense. And then the Court interposed a question at that point. It was very clear that her answer was that there was no possibility for rehabilitation for Mr. Tompkins. After the Court asked questions comes the part about, I didn't consider rehabilitation. The next question from counsel was, did you consider giving him suspension or a letter of warning instead of removal? The answer was no. The next question was, okay, and why didn't you? And the answer was because of the seriousness of the offense. And I think that reading all this in context. Wasn't this the first offense? For this employee, yes, Your Honor. Absolutely. And there's testimony that she did consider his 11 years of work with the Postal Service as well as his lack of a prior. In other words, one mistake after 11 years and you're out. When it comes to this, first of all, Judge, I would take issue with the characterization of it as a mistake. This was, in fact, a crime. And he did plead guilty to a crime in federal district court. So, it's not a mistake. But second of all, I think it's important to recognize, as I stated at the beginning, this kind of issue goes to the heart of the Postal Service's business. The Postal Service is, in fact, I'll exclude the courts, the most trusted government agency. Believe it or not, there are studies that say that, year in and year out, the people of the United States entrust their important correspondence and their packages to the Postal Service. And that trust is why, as you'll see in the record, employees like Mr. Tompkins are given two pieces of paper that they sign when they enter on to duty that stresses the sanctity of the mail. And it may not seem important outside of the Postal Service, but within the Postal Service, it's extremely serious. If it had been our package, we would have considered it very serious. I think so, Your Honor. What about the three versus one charge? I think that it's important to recognize what the A.J. actually found. And that is that it was one charge with three specifications. And this court has, on numerous occasions, explained how this works. There are, when there are these sort of less defined charges like improper conduct, you look to the narrative and determine what is actually going on here. Are there separate acts, or is this really just one act? And here, the administrative judge looked at the specification and concluded that what this was was one charge with three specifications, not one charge with three elements. And that is absolutely correct, because you can do any of these three things separately. They're not combined. An example of a charge with elements would be being a felon in possession of a firearm. It's illegal to be a felon. It's not illegal to be a felon. It's not illegal to be in possession of a firearm. But when you put the two together, it is illegal. Those are elements of a single offense. Here, he could have opened the mail without obstructing it and without unauthorized possession. He could have obstructed it without opening it, and that's what he claims, and that's what the A.J. found, that he didn't open it, without also possessing it. He could have thrown it in the garbage. That would have obstructed it. And he certainly could have possessed the mail without opening it, and that's what he did when he took it out of the post office. In other words, we don't have to worry about commas and semicolons. No, Your Honor, and I also point out, too, that this is a standard charging practice, to charge in the conjunctive and prove in the disjunctive. And the Supreme Court has even said that that's the proper way to do it. When you have three different ways of violating the same, of committing the same offense, that is the proper way to do it, to use the word and, and to charge them conjunctively. I think another issue that the court will have to consider is, if it, if it reads this differently, is whether there should, there's any point in looking at the penalty again. And I think, again, there's no reason to do that. There's no reason to send it back, because there's testimony in the record that the, that the offenses that he stipulated to, unauthorized possession and obstructing the mail, were just as serious as the one he was not, the charge that was not sustained, which is the opening. What, what do you say to the argument that Ms. McGyver makes about the prejudicial effect of the administrative judge's failure to elucidate the three versus one charges at the outset? I'm not sure that I understand the argument, but if I, to the best of my ability, I'll try to, I'll try to respond to that, Judge. If the, if the administrative judge had decided in advance that it was one charge, three specifications, I'm not sure that there would have been a hearing at all. I think, at that point, the judge could rely on the stipulation that he had committed two of the three specifications to sustain the charge, or if there was a hearing, it would have been much more limited. It only would have been about the, the proper penalty. But as it stood, the petitioner was given the opportunity to make arguments about whether he opened the mail or not. And so I'm not, I'm not really sure how it, it, it, it prejudiced him. There was no question about, he had, by the time of the hearing, he had played guilty to the offense, and there wasn't going to be an argument about it. Well, I can imagine a form of prejudice. Suppose that the administrative judge had said at the outset, oh yeah, you have to prove all three. And then the entire focus of the defense had been on the non-opening factor. And this was a sort of criminal case, and that was the way it broke. And then at the end of the trial, the judge said, well, actually, I've reconsidered that, and I now think there are three separate offenses, three separate crimes, and I'm going to instruct the jury that all they have to find is, is one of the three. I would think that that would be something the defense lawyer would be pretty unhappy about. In the criminal context, absolutely. I don't have any disagreement with that. Here... But that would be the same argument of prejudice. I mean, it may be that the trial judge was not obliged to give a ruling in advance, but I can see how a ruling, the failure to give a ruling, could mislead the, in this case, the petitioner's counsel. Well, I think that the key statement in that question, the last part of it, is the failure to give a ruling. This was clearly at issue, and the judge had asked for some briefing on this. So when they went into the hearing, counsel for both sides knew that the judge had not decided whether it was one charge, three specifications, or three, or one single charge with three elements. And so I think that the lawyers had to proceed on the possibility that the judge might do either. It's a different, it's different than the hypothetical you posed, which was the judge decided one thing at the beginning, everyone proceeded on that. I understand. I'd like to briefly address the notice issue, and I think it's important to recognize what the argument in the brief is, and that's the argument that's before the court. The argument in the brief is that notice should have been provided of the proposed, the reasons for the emergency removal prior to the OIG interview of the petitioner, and that simply can't be right. The OIG is a separate part of the Postal Service. It can interview employees. It gives them the garrity warnings. It has nothing to do with management's decision about placing the petitioner on emergency leave, and it was only as a factual matter, only after the petitioner admitted to taking the mail, that he was placed on emergency leave. So it's not possible, it seems to me, to give notice of the reasons for placing the person on emergency leave before that decision is made. And then after that point, as Judge Saul pointed out, he knew darn well why he was placed on administrative leave. He lied to OIG agents repeatedly during the interview and only admitted to taking the mail after being presented with irrefutable evidence of what had happened. Unless the court has any other questions, I think the other issues are addressed adequately in the briefs, but I'm happy to ask any questions the court might have. No, thank you, Mr. Elston. We'll give Ms. McIver a little time for reply if she wishes. Thank you, Your Honors. Up to three minutes. I do wish, Your Honors. Thank you very much. The first thing I'd like to respond to was opposing counsel's statement about Ms. Bailey not being a lawyer. First of all, he stopped with the part of the questioning or the transcript prior to the part that is, we believe, most relevant, where the judge asked, do you believe that rehabilitative potential exists or that it was impossible for him to be rehabilitated and did you consider that? She said no. The judge asked, no what? It's not possible or you didn't consider it? She responded, I didn't consider rehabilitation. So I think it makes it quite clear that she was making the statement that she didn't even consider it. It was a Douglas factor that she did not consider. It was during the questioning about Douglas factors, and I don't think that this is a legal issue. It's a semantic issue and it doesn't require a lawyer to understand what the meaning of consider is. We've said in our Douglas type situations that it's not necessary for a deciding official to consider every one of the whatever number of factors there are. Are you saying or suggesting that rehabilitation, no matter what the circumstances of the case are, is a factor that always must be considered? I can't imagine a circumstance under which it shouldn't be considered. I specifically can't imagine such a circumstance when, whereas here, we're dealing with an 11-year exemplary employee who's received all sorts of awards and accolades for his exemplary work with the Postal Service, who's been relied on to act as a supervisor, who is a decorated war veteran, with someone of Mr. Tompkins' background and so on. He apparently was convicted of a criminal act for violating one of the most basic aspects of the Postal Service's charter? Well, actually, the conviction was he pled guilty, and he pled guilty to obstruction only. Obstruction has to do with purely defined as a delay in the delivery of the mail. He did not plead guilty to theft. In fact, it was deemed that there was not enough evidence to even show theft. I think that that's why the opening element, as we believe it is, is so important because the opening element, we believe, is equivalent to or equates to an element of intent. To open something, take it out of a box to take it for yourself, I think of it sort of as theft by taking versus theft of mislaid property. There's no intent to take it away from another person where there's a broken camcorder that drops out with no boxes, no identifying markers, and he believes— Right, but his understanding was that that property, that sort of property or mail, where that sort of thing happens, you put it in this bin, it goes away to some building and stays there for a year. Oftentimes, most times, it's destroyed, whereas here, the camcorder itself was broken. Unless somebody claims it. I'm sorry? Sure enough, it shows up in the bin. But here, the camcorder was broken, and he believed it to be broken from having fallen from the speedy as that small parcel bucket that dropped it down onto the conveyor belt. And so, where it is now damaged, the fact of the matter is the Postal Service may have had to replace it anyway, but he wasn't even thinking that far in advance because he's not thinking he's taking it away from someone at that point. He's thinking, oh, it's unmarked. I know these things end up getting thrown away anyway. There are— Some of them. I'm sorry? Some of them. Some of them. The ones that don't get claimed. Right. By the rightful owners. Precisely. I'm speaking to his thinking at the time. I understand. And thought that he would take it because he was part of a video ministry for his church, that he could do some good there and get it fixed because he was familiar with camcorders and take it to the place that he always goes to. He obviously wasn't trying to conceal anything. He didn't take it there and use someone else's name. He didn't take it to a different electronic store than he typically went. As you can see, your red light has been on for a while. I think we have your argument. Thank you very much. The case has been taken under advisement. Thank you.